IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 25-60046 |
| **Nathaniel Spencer Lyne and** | ) | |
| **Hallee Nicole Lyne,** | ) | Chapter 13 |
| | ) | |
| **Debtors.** | | |

**OPINION AND ORDER GRANTING
TRUSTEE'S MOTION TO DENY CONFIRMATION**

Today's question is whether the first amended chapter 13 plan proposed by debtors Nathanial and Hallee Lyne, Dkt. No. 49, satisfies the mandate under 11 U.S.C. § 1325(a)(4) that unsecured creditors receive under the plan at least the present value of what they would have received in a hypothetical chapter 7 liquidation of the debtors' estate, colloquially called the "best interest of creditors test." The chapter 13 trustee believes the plan does not satisfy that test because he avoided, as a preferential transfer, a purchase-money security interest in a 2024 Toyota Sienna that the Lynes own as tenants by the entirety; the Lynes do not and cannot claim any exemption, including the tenancy by the entirety (TBE) exemption, in the Sienna under § 522(g); and the plan does not provide for the payment of the Sienna's value—approximately $39,000—to the Lynes' individual unsecured creditors. The Lynes believe the plan satisfies the best interest of creditors test because it proposes to pay all their joint creditors in full, and individual unsecured creditors are not entitled to the Sienna's value because the Lynes own it as tenants by the entirety.

Answering the question requires the court to navigate the intersection of bankruptcy law—specifically, the inclusion and treatment of TBE property in the bankruptcy estate—and the protection of TBE property from individual creditors under Missouri law.[1]

For the reasons explained below, the court agrees with the trustee that the plan fails the best interest of creditors test and cannot be confirmed. Therefore, the court GRANTS the trustee's motion to deny confirmation.

## BURDEN OF PROOF

The Bankruptcy Code does not expressly state which party has the burden of proof on whether a chapter 13 plan satisfies the confirmation requirements of § 1325(a). Judge Dow wrestled with this question in *In re Smith,* 328 B.R. 797, 801–02 (Bankr. W.D. Mo. 2005), and after identifying a split in authority, he opined that "the better rule is that the debtor has the ultimate burden of proof on a [§ 1325(a)] issue, with the initial burden of producing a question regarding compliance with confirmation requirements with the creditor." Judge Federman seemed to agree in *In re Carey,* 402 B.R. 327, 331 (Bankr. W.D. Mo. 2009), when he stated that "it is the debtor, and not the trustee, who has the ultimate burden of proving that a plan should be confirmed." A few years later, Judge Norton weighed in, stating: "In the Eighth Circuit, courts have generally borrowed the civil rule that the movant bears the

---

[1] Joint creditors are creditors with claims against both debtors, while individual creditors have claims against only one of the debtors. Under Missouri law, TBE property can be used to satisfy joint claims, but not individual claims. *See Garner v. Strauss (In re Garner)*, 952 F.2d 232, 234–35 (8th Cir. 1991). The application of this state law rule in bankruptcy, when a trustee avoids a lien against TBE property and preserves its value for the benefit of the bankruptcy estate, is the subject of this order.

2

burden of production on an objection to confirmation. This [rule] means that the original burden of production on an objection to confirmation rests with the objecting [party]." *In re Williams*, No. 16–30243–can13, 2017 WL 2120044, at *9 (Bankr. W.D. Mo. May 15, 2017) (citing *Educ. Assistance Corp. v. Zellner*, 827 F.2d 1222, 1226 (8th Cir. 1987)). Once the objecting party produces evidence in support of its objection, the burden shifts to the debtor. *Id.*

Applying this authority, the court determines that the trustee has raised a valid question under the facts of this case; whether the Lynes' amended chapter 13 plan satisfies the best interest of creditors test under § 1325(a)(4). The Lynes now have the burden to prove their plan satisfies that test.

## BACKGROUND

The Lynes filed their voluntary chapter 13 bankruptcy petition on January 27, 2025. In their bankruptcy schedules, the Lynes disclosed that they jointly own a 2024 Toyota Sienna worth $39,175, which they pledged as collateral to secure a loan from Exeter Finance. The chapter 13 trustee discovered that Exeter perfected its lien more than 30 days after the Lynes acquired the vehicle and within 90 days before the Lynes filed their chapter 13 petition. So, the trustee filed an adversary complaint seeking to avoid Exeter's lien on the Sienna under 11 U.S.C. § 547(b). Exeter and the trustee subsequently submitted, and the court entered, an agreed order avoiding the lien under § 547 and preserving the property for the benefit of the bankruptcy estate pursuant to §§ 550 and 551.

3

Following the avoidance of Exeter's lien, the Lynes filed their first amended chapter 13 plan. The Lynes owe approximately $40,900 to joint unsecured creditors and roughly $100,000 to individual unsecured creditors. In the amended plan, the Lynes propose to pay a 100% dividend to their joint unsecured creditors, based on the $156,095 equity in their jointly-owned TBE residence. The Lynes, however, propose to pay nothing to their individual unsecured creditors—thus ignoring the equity gained from the lien avoidance, despite not claiming the TBE or any other exemption in the Sienna.[2]

The trustee filed the current motion to deny confirmation of the Lynes' first amended plan. The trustee argues that § 522(g) prohibits the Lynes from claiming any exemption in the Sienna, and because the Sienna is not exempt, its value would be available to pay individual unsecured creditors in a hypothetical chapter 7 liquidation. But that value is not accounted for in the amended plan. Thus, the trustee argues that the plan fails the best interest of creditors test under § 1325(a)(4) and the court must deny confirmation of the amended plan.

Rather than challenge the trustee on the exemption issue, the Lynes argue that the Sienna's value is irrelevant to confirmation of their amended plan because the mere fact that they own the Sienna as tenants by the entirety allows them to shield its value from their individual creditors, and they already propose to pay their joint creditors in full due to the significant equity in their TBE home. Thus, the Lynes

---

[2] Initially, the Lynes claimed the Sienna as exempt under Missouri's $3,000 motor vehicle exemption. *See* Mo. Rev. Stat. § 513.430.1(5) (2025). The trustee, however, objected to this claimed exemption, and the court sustained the objection, Dkt. No. 38, on April 22, 2025. Following the court's order sustaining the objection, the Lynes did not, and still have not, claimed any exemption in the Sienna.

4

argue the first amended plan is confirmable, despite proposing a 0% dividend to individual unsecured creditors.

The key issue before the court is whether individual unsecured creditors are entitled to any payment under the plan to account for the equity in the Sienna.

## ANALYSIS

The court determines that the Lynes must pay through their plan the non-exempt value of the Sienna to their individual unsecured creditors. This is so because the Lynes do not claim any exemption in the Sienna, § 522(g) prevents the Lynes from claiming an exemption in the Sienna, and a chapter 7 trustee would administer the non-exempt Sienna for the benefit of all creditors in a hypothetical chapter 7 liquidation. Accordingly, the plan is not confirmable.

### I. The Sienna Is Property of the Estate That the Lynes Do Not and Cannot Claim as Exempt

Section 541 states that the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). It is well established that § 541 brings TBE property into the bankruptcy estate. *See Garner v. Strauss (In re Garner)*, 952 F.2d 232, 233–34 (8th Cir. 1991).

Moreover, §§ 547 and 551 augment the estate by including property that the trustee recovers in an avoidance action and preserves as property of the estate. Section 551 states that the trustee assumes the role of the avoided lienholder and automatically preserves the equity gained from the lien avoidance for the benefit of the estate—including the general unsecured creditors. *Shubert v. Jeter (In re Jeter)*, 171 B.R. 1015, 1023 (Bankr. W.D. Mo. 1994); *Dewsnup v. Timm*, 502 U.S. 410, 422

5

n.1 (1992) (Scalia, J., dissenting). The Bankruptcy Code provides this automatic preservation to ensure that junior lienholders or others with interests that might otherwise precede general unsecured creditors do not reap all the benefits of the lien avoidance. S. Rep. No. 95-989, at 91 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5877 ("[Section 551] as a whole prevents junior lienors from improving their position at the expense of the estate when a senior lien is avoided.").

Section 522 authorizes debtors to exempt specific property from the bankruptcy estate. Section 522(d) lists the federal exemptions available to debtors. Missouri, however, is among the many states that have opted out of the federal exemptions. *Benn v. Cole (In re Benn)*, 491 F.3d 811, 813 (8th Cir. 2007). Thus, Missouri residents can only elect "exemptions available under Missouri law and under federal statutes other than . . . § 522(d)." *Wallerstedt v. Sosne (In re Wallerstedt)*, 930 F.2d 630, 631 n.1 (8th Cir. 1991) (citing Mo. Rev. Stat. § 513.427).

The available federal exemption statutes "other than § 522(d)" include § 522(b)(3)(B), which allows a debtor to exempt TBE property to the extent it "is exempt from process under applicable nonbankruptcy law." 11 U.S.C. § 522(b)(3)(B). Under applicable non-bankruptcy law (here, Missouri law), TBE property is exempt from process by individual creditors. *Garner v. Strauss (In re Garner)*, 952 F.2d 232, 234–35 (8th Cir. 1991). TBE property, however, is not exempt from process by joint creditors. *Id.* at 235.

Debtors typically may shield equity in their TBE property from their individual creditors by claiming this exemption. But when a trustee avoids a preferential

6

transfer of an interest in a debtor's TBE property and preserves it for the estate, § 522(g) prevents the debtor from claiming an exemption in the recovered property unless certain prerequisites are satisfied. Section 522(g) states:

> [T]he debtor may exempt under [§ 522(b)] property that the trustee recovers . . . to the extent that the debtor could have exempted such property under [§ 522(b)] if such property had not been transferred, if—
> (1)     (A) such transfer was not a voluntary transfer of such property by the debtor; and
>         (B) the debtor did not conceal such property; or
> (2) the debtor could have avoided such transfer under [§ 522(f)(1)(B)[3]].

11 U.S.C. 522(g). Courts have consistently interpreted this language to prevent a debtor from claiming an exemption in recovered property if the debtor voluntarily transferred the property, concealed the transfer, or could not have avoided the lien under § 522(f)(1)(B) (e.g., when the lien is possessory or a purchase-money security interest). *In re Hicks*, 342 B.R. 596, 598–99 (Bankr. W.D. Mo. 2006). "The purpose of § 522(g) is to prevent a debtor from claiming an exemption in [recovered] property which was transferred in a manner giving rise to the trustee's avoiding powers, where the transfer was voluntary or where the transfer or property interest was concealed." *Id.* at 599 (quoting *Glass v. Hitt (In re Glass)*, 60 F.3d 565, 568–69 (9th Cir. 1995)).

The Lynes do not and cannot claim an exemption in the Sienna. Here, it is undisputed that the Lynes own the Sienna as TBE property that is property of the estate. Not claiming the TBE exemption is arguably dispositive of the Lynes'

---

[3] Section 522(f)(1)(B) states that "the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under [§ 522(b)], if such lien is . . . a nonpossessory, *nonpurchase-money security interest*." *Id.* (emphasis added).

7

entitlement to shield the equity in the Sienna from individual creditors.[4] Congress created § 522(b)(3)(B) as the mechanism available to debtors to protect their state-law TBE interests in bankruptcy. Thus, the Lynes must claim the TBE exemption under § 522(b)(3)(B) to protect the Sienna, or its value, from administration for the benefit of their creditors. But here, even if the Lynes had attempted to claim the § 522(b)(3)(B) exemption to protect the Sienna from their individual creditors, § 522(g) prohibits the Lynes from claiming that exemption because (1) the trustee avoided Exeter's lien in the Sienna as a preferential transfer and preserved its value for the estate, (2) the Lynes voluntarily granted the lien to Exeter, and (3) Exeter's lien was a purchase-money security interest that the Lynes could not have avoided under § 522(f)(1)(B).

Because the Sienna is property of the estate that the Lynes do not and cannot claim as exempt, the court must next determine if the TBE interest alone is sufficient to shield the equity in the Sienna from the Lynes' individual unsecured creditors.

## II. Mere TBE Ownership Is Insufficient to Shield Property

Though the Lynes do not claim the TBE exemption and § 522(g) makes it unavailable, the Lynes argue that the value of the non-exempt TBE property can be distributed only to joint creditors. The Lynes rely on Missouri's common-law tradition of TBE property being unavailable to satisfy individual debts. The Lynes reason that distributing TBE property to individual creditors "contradicts the ancient

---

[4] *See, e.g.*, *Fairfield v. United States (In re Ballard)*, 65 F.3d 367, 372 n.2 (4th Cir. 1995) (Hall, J., dissenting) ("Only when the exemption option has been exercised, however, does [TBE] property stand available for the satisfaction of only the joint debts.").

8

foundational principle of [TBE], which is that neither husband nor wife retain[s] an individual interest in the property. The ownership interest lies with the marital unit."[5] Accordingly, the Lynes argue that mere TBE ownership is sufficient to shield property from individual creditors in bankruptcy. In other words, the Lynes contend that a debtor *may* claim an exemption in TBE property under § 522(b)(3)(B), but exemption is not *required* because the nature of TBE ownership shields TBE property from individual creditors, even without of the exemption.

Though the court recognizes the protections afforded to TBE property under Missouri common law, the court determines that mere TBE ownership, without a validly-claimed exemption, is insufficient to prevent recovery to individual creditors in bankruptcy for four reasons.

First, holding that mere TBE ownership is sufficient to shield property would render § 522(b)(3)(B) superfluous. "It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (internal quotation marks omitted) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)). Section 522(b)(3)(B), which incorporates state law TBE protections as an exemption in bankruptcy, would serve no purpose if mere TBE ownership were sufficient to shield TBE property from process by individual creditors in bankruptcy. Thus, the Lynes' interpretation of § 522(b)(3)(B) would render it superfluous. Accordingly, the court rejects their interpretation.

---

[5] Lynes' Br. 2, Dkt. No. 71, Nov. 21, 2025.

9

Second, the intersection between bankruptcy and state law does not foreclose the court's interpretation because the Bankruptcy Code generally governs the treatment of property in bankruptcy even when the Code might seem to conflict with state law. The Constitution grants Congress the sole authority to establish "uniform Laws on the subject of Bankruptcies throughout the United States." U.S. Const. art. I, § 8, cl. 4. This exclusive grant of authority means that a debtor's decision to file a bankruptcy petition may result in the treatment of its property rights in a manner inconsistent with the treatment it might receive under state law. *Title Max v. Northington (In re Northington)*, 876 F.3d 1302, 1311 (11th Cir. 2017) ("Congress has extensive authority in the bankruptcy arena—including the authority to supersede state property law." (citing U.S. Const. art. I, § 8, cl. 4)).

The court rejects the Lynes' argument that their rights under Missouri TBE law should control despite the Bankruptcy Code's clear modification of those rights in bankruptcy. The Lynes cite *Butner v. United States*, 440 U.S. 48 (1979) for the following proposition: "Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Id.* at 55. *Butner*, however, acknowledges that federal interests can change the treatment of a debtor's property interests. Here, there are two overriding federal interests that require a different result: (1) limiting a debtor's ability to exempt transferred property that the trustee recovers for the benefit of unsecured creditors, *see In re Hicks*, 342 B.R. 596, 599 (Bankr. W.D. Mo.

10

2006) (discussing the purpose of § 522(g)); and (2) ensuring a "uniform" bankruptcy process and administration of estate assets. *See Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 655 (2006) ("[T]he Bankruptcy Code aims, in the main, to secure equal distribution among creditors."). These federal interests "provide sufficient justification for why a bankruptcy trustee might have more remedies available to it than another Missouri creditor." *Abdul-Rahim v. LaBarge (In re Abdul-Rahim)*, 720 F.3d 710, 714 (8th Cir. 2013) (citing *Benn v. Cole (In re Benn)*, 491 F.3d 811, 816 (8th Cir. 2007)).

Third, the court is unpersuaded by the Lynes' argument that allowing individual creditors to access TBE property would create a windfall not permitted under Missouri common law. Again citing *Butner*, the Lynes note that a party should not receive "a windfall merely by reason of the happenstance of bankruptcy." *Butner*, 440 U.S. at 55 (quoting *Lewis v. Mfrs. Nat'l Bank*, 364 U.S. 603, 609 (1961)). The court acknowledges the seemingly inequitable result of allowing individual creditors to receive a benefit from TBE property. But allowing the Lynes to shield the Sienna from individual creditors would also result in inequity. Outside of bankruptcy, the Lynes' Sienna would still be subject to Exeter's perfected security interest. The trustee's avoidance of Exeter's lien and Exeter's associated financial loss generated a "windfall" that some party must receive. The Lynes should not "reap [the] windfall benefit" of avoiding Exeter's lien "just because the lien which the debtor granted was not perfected . . . timely," *In re Hicks*, 342 B.R. at 601, or "by reason of the happenstance of bankruptcy." *Butner*, 440 U.S. at 55. This unintended benefit to

11

unsecured creditors is part of the bankruptcy bargain the Lynes entered into when they sought relief under the Bankruptcy Code. Bankruptcy can provide the Lynes "extraordinary relief that is unavailable outside of bankruptcy by obtaining a bankruptcy discharge." *In re Benn*, 491 F.3d at 816. But in exchange, their trustee may exercise "powers that are unavailable to creditors outside of bankruptcy." *Id.* Moreover, the resulting benefits to unsecured creditors are precisely what § 522(g) contemplates. Congress has explicitly determined which assets are available to satisfy a debtor's debts, and under which circumstances a debtor may or may not claim those assets as exempt. Because Congress restricted a debtor's ability to claim their exemptions when § 522(g) applies, the Lynes' windfall argument fails.

Fourth, and finally, allowing individual creditors to access TBE property is consistent with this court's precedent. In *Brown v. Eads (In re Eads)*, 271 B.R. 371 (Bankr. W.D. Mo. 2002), the court discussed the proper division of proceeds from the sale of TBE property owned by a debtor and his non-filing spouse. The court stated that the trustee in *Eads* could use excess, non-exempt TBE property to satisfy the claims of individual creditors. *Id.* at 377. Specifically, the court concluded:

> If there are funds remaining after the Trustee has paid the joint debts of [the debtor and his non-filing spouse], the remaining funds should be returned to [the debtor] as his [TBE] funds, free from the claims of his individual creditors, *if he amends his schedules to exempt the property* pursuant to § 522(b)([3])(B). *If he fails to do so*, the Trustee may apply any amounts remaining after payment of the parties' joint debts to the payment of [the debtor's] separate, *individual* debts.

*Id.* at 376–77 (emphasis added) (citation omitted). This authority further supports the logical conclusion that mere TBE ownership, without a validly-claimed exemption, is insufficient to shield TBE property from individual creditors.[6]

### III. The Court Cannot Confirm the Lynes' Chapter 13 Plan

Having determined that the Lynes cannot exempt the Sienna or shield its value from their individual unsecured creditors, the court now analyzes whether it can confirm the Lynes' chapter 13 plan.

Section 1325 sets forth the requirements to confirm a chapter 13 plan. Among them is the requirement that "the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7." 11 U.S.C. § 1325(a)(4). In a chapter 7 case, the trustee must "collect and reduce to money the property of the estate for which" he serves in a manner that maximizes the return to the debtor's unsecured creditors. 11 U.S.C. § 704(a)(1).

Here, if the Lynes had filed for bankruptcy relief under chapter 7, a trustee could have (1) administered a portion of the value of their TBE residence to pay the Lynes' joint creditors in full, (2) avoided and recovered Exeter's lien in the Sienna for

---

[6] In their brief, the Lynes cited *In re Monzon*, 214 B.R. 38 (Bankr. S.D. Fla. 1997), to support their argument that "non-exempt" TBE property may be distributed only to joint creditors. *See id.* at 48. This argument, however, mischaracterizes the holding in that case. In *Monzon*, the debtors claimed the TBE exemption. *Id.* at 39. The Florida court used the term "non-exempt" TBE property to refer to the portion of TBE property that joint creditors can pursue (i.e., the portion of TBE property equal to the amount of joint debt). *Id.* at 40–41. Here, when using the term "non-exempt" TBE property, the court is referring to TBE property that the debtors have not claimed as exempt under the TBE exemption. Thus, *Monzon* does not apply.

13

the benefit of the estate, and (3) administered the Sienna for the benefit of the Lynes' individual unsecured creditors. As a result, the Lynes' individual unsecured creditors would have received at least partial payment of their claims had this case been filed as a hypothetical chapter 7 case. The Lynes' first amended plan, however, does not provide for the distribution of any amount to their individual unsecured creditors. Thus, the amended plan pays the Lynes' individual unsecured creditors less than what they would receive in a hypothetical chapter 7 liquidation and, consequently, fails the best interest of creditors test under § 1325(a)(4). The court, therefore, cannot confirm the Lynes' amended plan.

## CONCLUSION

Because the Lynes' individual unsecured creditors would receive a partial distribution in a hypothetical chapter 7 liquidation, the Lynes' amended chapter 13 plan fails the mandatory "best interest of creditors" test under § 1325(a)(4) and may not be confirmed. Consequently, the court GRANTS the trustee's motion to deny confirmation. The Lynes will have thirty (30) days after entry of this order to file an amended plan.

Dated: 2/4/2026  /s/ Brian T. Fenimore
United States Bankruptcy Judge